## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

BRANDON M. WOLGAST,

      *Plaintiff,*

*v.*

TAWAS AREA SCHOOL DISTRICT
BOARD OF EDUCATION,
JEFFREY HUTCHINSON,
ANNE FREEL, and
CONNIE O'CONNOR,

      *Defendants.*

_____/

CASE NO. 15-cv-10495

DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(Doc. 8)

## I.   RECOMMENDATION

For the following reasons, **IT IS RECOMMENDED** that Plaintiff's Motion for a Preliminary Injunction be **DENIED**.

## II.   REPORT

### A.   Background

Proceeding pro se, Plaintiff Brandon Wolgast filed this action on February 6, 2015. (Doc. 1.) On February 10, 2015 District Judge Thomas L. Ludington referred pretrial matters to the undersigned magistrate judge. (Doc. 3.) Plaintiff filed an Amended Complaint on February 23, 2015. (Doc. 7.) Presently before the Court is Plaintiff's

February 23, 2015 Motion for Preliminary Injunction—he seeks to be reinstated "into his position of Technology Support Specialist." (Doc. 8 at ID 77.) On March 12, 2015, Defendants filed a Response to Plaintiff's Motion for Preliminary Injunction. (Doc. 15.) On March 30, 2015 Plaintiff filed his Reply. (Doc. 18.) Therefore, Plaintiff's Motion is ready for report and recommendation without oral argument. *See* E.D. Mich. L.R. 7.1(f)(2).

Plaintiff was a Technology Support Specialist employed by the Tawas Area Schools. (Am. Compl. Doc. 7 ¶ 2; Answer, Doc. 11 ¶ 2.) Defendants are Tawas Area School District Board of Education ("Board" or "District"); Jeffrey Hutchison, Superintendent; Anne Freel, former Board President; and Connie O'Connor, former Board Vice President. (*Id.* ¶¶ 1.) On December 11, 2014, Defendant Hutchison notified Plaintiff that the Board would not be renewing his employment contract and Plaintiff was placed on paid administrative leave until his present contract terminated on December 31, 2014. (*Id.* ¶¶ 82.)

Plaintiff's claims against Defendants include (1) a Section 1983 claim for their failure to provide Plaintiff a hearing before the non-renewal of his employment contract in violation of his Fourteenth Amendment right to procedural due process; (2) a Section 1983 claim for First Amendment retaliation by not renewing Plaintiff's employment contract because he engaged in protected speech; (3) retaliation under Michigan's Whistle-Blower's Protection Act ("WPA"), Mich. Comp. Laws §§ 15.361-15.369; (4) a violation of Michigan Compiled Laws § 380.1229 for failure to give notice of and provide a hearing for the nonrenewal of an employment contract; (5) termination without

a proper board vote in violation of Michigan Compiled Laws § 380.1201; (6) creation of a public policy without a proper board vote in violation of Michigan Compiled Laws § 380.1201; (7) engaging in secret deliberations in violation of Michigan's Open Meetings Act, Mich. Comp. Laws §§ 15.261-15.275; and (8) failure to take and keep minutes at an open meeting in violation of Michigan Open Meetings Act, *Id.* (Am. Compl., Doc 7 ¶¶ 97-121.)

Plaintiff was hired by the Board as a "Technology Technician" on March 14, 2011. (Am. Compl. Doc. 7 ¶ 11; Answer, Doc. 11 ¶ 11.) In late 2013, an informal technology committee was formed. (*Id.* ¶¶ 14.) Among the committee's goals was the exploration and possible implementation of a one-to-one initiative, that is, a program with the end goal of one computer device for every student. (*Id* ¶¶ 16.) Plaintiff and Defendants Hutchison and O'Connor visited Traverse City in May 2014 to explore its school's one-to-one program, which included devices that students in certain grades could take home. (*Id.* ¶¶ 18.) Later that month, Plaintiff presented information about possible one-to-one technology program to Hutchison and the high school principal. (*Id.* ¶¶ 18.) Plaintiff states he did a great deal of work seeking quotes on costs and created a "detailed proposal showing exactly how a grade 9-12[] take-home version of a one-to-one program could be implemented in the District." (Am. Compl., Doc. 7 ¶ 18.) He also states that he "spoke personally with each and every teacher in grades 9 through 12 regarding their technology needs for the next school year as well as their opinion on a one-to-one program." (*Id.* ¶ 18-19.) He said that the "response was almost unanimous—nearly all

3

staff supported a one-to-one program but opposed the idea of the devices going home with students." (*Id.* ¶ 19.)

In November, a $9.7 million bond was passed by Iosco County voters and $500,000 was set aside for "instructional technology." (Am. Compl., Doc. 7 ¶ 20; Answer, Doc. 11 ¶ 20.) On November 10, 2014, the Board created a new technology committee, which consisted of Defendants Hutchison, O'Connor, and Freel, and Board member Jim Bacarella. (Am. Compl., Doc. 7 ¶ 23; Answer, Doc. 11 ¶ 23.)

On November 19, 2014 the Technology Committee met; Defendant Hutchison, Defendant O'Connor, and Plaintiff were among those present. (*Id.* ¶¶ 26.) By the end of the meeting, there was not a consensus about what shape the one-to-one program would take: Defendants Hutchison and O'Connor favored take-home laptops; Defendant Freel was absent; and Plaintiff states he wanted a hybrid program with in-class laptops and take-home tablets or e-readers. (*Id.* ¶¶ 28.)  Plaintiff alleges that "hours after the meeting had adjourned, the standing Technology Committee, including [Defendant] Freel, who had been absent from the meeting, deliberated and made decisions of District policy via email." (*Id.* ¶ 35.) Defendants deny that any deliberation or decision-making took place at that time. (Answer, Doc. 11 ¶ 35.)

On December 3, 2014, Defendant Hutchison notified Plaintiff about a Technology Committee meeting scheduled for that evening where his attendance was "very important." (Am. Compl., Doc. 7 ¶ 48; Answer, Doc. 11 ¶ 47.) At the meeting, Plaintiff was informed that the decision had been made to move forward with a one-to-one

technology program where laptops would be sent home with students in grades 9-12. (*Id.* ¶¶ 52.)

On December 8, 2014, high school principal, Eric Diroff, informed Plaintiff that "he saw no reason why Wolgast's [employment] contract should not be renewed." (*Id.* ¶¶ 59.) Later that day at an internal staff meeting, Plaintiff alleges that he raised several concerns about the take home laptops, including the potential four-to-one cost difference between take home and classroom-managed laptops policy. (Am. Compl., Doc. 7 ¶¶ 63-64.) He also asked about the finality of the decision to allow students to take the laptops home. (*Id.* ¶ 65.)

Plaintiff claims that on December 8, 2014, he wrote an email to Hutchison seeking to renegotiate his employment contract, which was "up for renewal" later that month. (*Id.* ¶ 68-69.) Among other things, he wanted reasonable assurances that he would have summer help and some input on the "upcoming movement of the technology offices." (*Id.* ¶ 69-70.) He also complained about the "operation of the Technology Committee," including that it was overreaching and micromanaging. (*Id.* ¶ 70.) He said that he was the best person for the job, he could make the roll-out a success, and if the Board resolved the issues he had raised he would withdraw his objections to the take-home aspect of the program. (*Id.*) Plaintiff asked Hutchison to keep the email confidential and to let him know if anything seemed unreasonable. (*Id.* ¶¶ 71-72.) Plaintiff alleges that Defendants met in secret after the December 10, 2014 Personnel Committee Meeting to finalize their decision not to renew his employment contract. (*Id.* ¶¶ 78-80.)

B.     **Analysis and Conclusions**

1.     **Governing Law**

Preliminary injunctions are extraordinary remedies designed to "preserve the relative positions of the parties until further proceedings on the merits can be held." *Certified Restoration Dry Cleaning Network, L.L. C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007); *see also University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). "The purpose of a preliminary injunction is simply to preserve the status quo." *United States v. Edward & Sons*, 387 F.3d 258, 261 (6th Cir. 2004). The relief is an extraordinary remedy, "'involving the exercise of a very far-reaching power.'" *Leary v. Daeschner*, 228 F.2d 729, 739 (6th Cir. 2000) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991)). The movant carries the burden of "proving that the circumstances clearly demand" the preliminary injunction. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). The proof required to obtain a preliminary injunction "is much more stringent than the proof required to survive a summary judgment motion." *Leary*, 228 F.2d at 739.

Whether to grant such relief is a matter within the discretion of the district court. *Certified Restoration*, 511 F.3d at 540. The following factors are considered in determining whether to grant a preliminary injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *Id.* at 542. These are "factors to be balanced, not

prerequisites that must be met." *Id.* Courts have long held that "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

2.    **Analysis**

a.    ***A Preliminary Injunction is Inappropriate Because It Would Change the Status Quo***

To begin with, I suggest that reinstatement of employment is not an appropriate remedy at this stage because preliminary injunctions are designed to preserve the status quo until the case is decided. S*ee Edward*, 387 F.3d at 261. But here, the status quo is that Plaintiff is not currently employed by the Board.

Further, I suggest that even if it were ever appropriate to disrupt the status quo with a preliminary injunction, Plaintiff has failed to show that the circumstances clearly demand one in this case because none of the four factors weigh in his favor.

b.    ***Strong Likelihood of Success Factor[1]***

i.    *Procedural Due Process Claim*

Plaintiff contends that the decision, allegedly made in a secret meeting, to not renew his contract, without providing him with any notice, and without allowing him an opportunity to be heard, deprived him of a property interest without due process. (Doc. 8 at ID 84-86.)

---

[1] It is not necessary to address the likelihood of success for all eight of Plaintiff's claims for the purpose of preliminary injunction analysis, since it is only one factor. Therefore I suggest the focus be on the likelihood of success for the Due Process, Retaliation, and WPA claims. This suggestion is borne out by the parties' briefs, which focus almost exclusively on the first three claims in the likelihood of success analysis.

To prevail on the due process cause of action, a plaintiff must show the state deprived him or her of a property or liberty interest without due process. *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756-57 (2005); *Wojcik v. City of Romulus*, 257 F.3d 600, 609 (6th Cir. 2001). Specifically, a plaintiff must show three elements: (1) "[t]hat they have a life, liberty, or property interest protected by the Due Process Clause"; (2) "that they were deprived of this protected interested within the meaning of the Due Process Clause"; and (3) "that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

In *Board of Regents of State Colleges v. Roth*, the Supreme Court found that property interests are defined not by the Constitution, but "by existing rules or understandings that stem from an independent source such as a state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." 408 U.S. 564, 576 (1972). Further, "[n]o constitutional entitlement to procedural due process can logically arise when the decision-maker's power is wholly discretionary." *McClain v. NorthWest Cmty. Corrections Ctr. Judicial Corrections Bd.*, 440 F.3d 320, 330 (6th Cir. 2006).

Plaintiff asserts that the following statute created a property interest in his continued employment:

> (2) The board of a school district . . . may employ assistant superintendents, principals, assistant principals, guidance directors, and other administrators who do not assume tenure in that position . . . . The employment shall be by written contract. . . . If written notice of nonrenewal of the contract of a person described in this subsection is not given at least 60 days before the

termination date of the contract, the contract is renewed for an additional 1-year period.

(3) . . . The board shall not issue a notice of nonrenewal under this section unless the affected person has been provided with not less than 30 days' advance notice that the board is considering the nonrenewal together with a written statement of the reasons the board is considering the nonrenewal. . . . [T]he affected person shall be given the opportunity to meet with not less than a majority of the board to discuss the reasons stated in the written statement.

Mich. Comp. Laws § 380.1229(2)-(3).

The biggest factual dispute in the Due Process claim is whether Plaintiff was an "administrator" for the purposes of Section 380.1229(2). Defendants assert that this provision did not apply to Plaintiff's employment contract because he was a Technology Support Specialist, which is not an "administrator." (Aff. of Jeffrey Hutchison, Doc. 15-2 at ID 214.) Defendants assert that Plaintiff was an "at-will employee under a one [year] contract renewal solely at the discretion of the District." (Doc. 15 at ID 196.) In support of their contention that Plaintiff was not an administrator, Defendants point out differences between Plaintiff's contract and administrators' contracts; note that administrators are issued certificates which Plaintiff did not have; note that Plaintiff was not treated as an administrator as evidenced by Board meeting minutes which do not list Plaintiff among administrators in attendance; and emphasize Plaintiff's request of a job title increase to administrator in his December 8, 2014 email attachment. (*Id.* at ID 196-199.)

Plaintiff argues that he was an "administrator" because he "performed numerous administrative duties including those . . . which are assigned to the District's Network

Administrators." (Doc. 8 at ID 85 (citing Doc. 8, Ex. D at ID 110 (laying out duties assigned to a network administrator)).) Defendants assert that Plaintiff was not a network administrator and even if he were, a network administrator is not a school administrator: "A network administrator administers a [computer] network; a school administrator administers a school." (Doc. 15 at ID 198.) I suggest that even if Plaintiff were the District's network administrator, he does not show that a network administrator is an administrator for the purposes of Section 380.1229(2).

In his Reply brief, Plaintiff points to an exhibit which he had attached to his Motion for Preliminary Injunction, noting, "Defendants did not address their own internal document which shows that they did indeed consider him an administrator." (Doc. 18 at ID 284.) The exhibit he is referring to is a timeline for contract expiration dates where Plaintiff's name, followed by the date his contract expired, appears in an alphabetically-ordered list under the heading "[a]dministration—varies." (*Id.* (citing Doc. 8 at ID 109).) First of all, parties cannot raise new arguments or evidence in a reply brief when doing so deprives the other side the opportunity to respond. *See Eng'g & Mfg. Servs., LLC v. Ashton*, 387 F. App'x 575, 583 (6th Cir. 2010) (citing *Seay v. Tennessee Valley Auth.*, 339 F.3d 454, 481-82 (6th Cir.2003)); *Martinez v. Comm'r of Soc. Sec.*, No. 09-13700, 2011 WL 1233479, at *2 n.1 (E.D. Mich. Mar. 30, 2011). However, even if Plaintiff was able to raise this argument, I suggest that the internal document's use of the term "administration" is probably broad and includes employees who are not "administrator[s]" for the purposes of Section 380.1229(2). For example, it does not appear that Plaintiff considers his technical support colleague, Ben Kendra, an

administrator, but Mr. Kendra's name also appears on the administration list. (Doc. 8 at ID 109.)

I suggest that there is not a strong likelihood of success on Plaintiff's Due Process claim because he is not very likely to show that he was an administrator. Section 380.1229(3) applies to "assistant superintendents, principals, assistant principals, guidance directors, and other administrators." Mich. Comp. Laws §§ 380.1229(2)-(3). The canon of statutory construction ejusdem generis "'ordinarily limits general terms which follow specific ones to matters similar to those specified . . . .'" *United States v. Powell*, 423 U.S. 87, 90 (1975) (quoting *Gooch v. United States*, 297 U.S. 124, 128 (1936)). It is difficult to see how a technology technician or even a network administrator would be in the same category of employees as superintendents, principals, and guidance directors. Rather, Plaintiff's former job more likely fell into a category akin to support personnel or staff. Therefore the property interest created by the statute likely does not apply to Plaintiff. If it does not, then Plaintiff's Due Process claim will fail.

### ii.     *First Amendment Retaliation Claim*

A First Amendment retaliation claim consists of the following elements: (1) the plaintiff engaged in constitutionally-protected conduct; (2) the defendant's adverse action would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection exists between elements one and two, that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175  F.3d 378, 395 (6th Cir. 1999) (en banc); *Kennedy v. City of Villa Hills, Kentucky*, 635 F.3d 210, 217 (6th Cir. 2011).

A public employee plaintiff who claims retaliatory discharge by a government employer must "meet additional standards to establish that the speech at issue is constitutionally protected." *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The first requirement is that the employee "spoke as a citizen on a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (citing *Pickering v. Bd. of Educ. of Township High Sch. Dist. 205*, 391 U.S. 563, 568 (1968)(teacher's exercise of right to speak on issues of public importance, accusation that too much money was being spent on athletics, could not serve as basis for dismissal from public employment). There is no cause of action, and the analysis thus ends, "when public employees make statements pursuant to their official duties [because] the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421.

If, however, the matter is of public concern and the employee is speaking as a citizen, then the second line of inquiry requires the plaintiff to "show that [his or] her interest in addressing these matters of public concern outweighs the interest of [his or] her employer 'in promoting the efficiency of the public services it performs through its employees.'" *Id.* (quoting *Pickering*, 391 U.S. at 568).

The Pickering framework then shifts the burden to the defendant. *Leary*, 349 F.3d at 898. "Once the public-employee plaintiff has met [his or] her burden and established a *prima facie* case, the burden of persuasion shifts to the defendant."). The defendant must show by a preponderance of the evidence "that there were other reasons for the adverse action and that the same adverse action would have resulted even if the plaintiff had not

engaged in the protected activity at issue." *Id.* This is a question of fact and "may not be decided on a motion for summary judgment unless the evidence is so one-sided that one party must prevail as a matter of law." *Id.* (internal quotations omitted).

Plaintiff alleges that Defendants put him on administrative leave and did not renew his employment contract because of "comments regarding matters of public concern" he made at the November 19 and the December 3, 2014 public meetings. (Am. Compl., Doc. 7 ¶ 98.) Defendants argue that Plaintiff is not likely to succeed on his First Amendment retaliation claim because his "comments regarding the District's one-to-one technology initiative and the take-home component of that plan were made in his role as one of the District's Technology Support Specialists, and so were not protected speech." (Doc. 15 at ID 189.) Defendants point to the fact that Plaintiff attended the meetings because Defendant Hutchison told him to attend, and that he was there "to report on and provide input regarding the information he had been tasked with gathering on how the District could implement a one-to-one technology project." (Doc. 15 at ID 193.)

Plaintiff asserts that he was speaking as a citizen because he was speaking "after school hours, off the clock, without pay, at two separate open meetings which had been publicly posted, to a committee [of] which [he] was not a member." (Doc. 8 at ID 90.) He says that "[t]o the extent [he] spoke his concerns about the sustainability of purchasing take-home laptops beyond four years as well as the method which the District would use to reach a decision on how to spend that money, including whether or not teachers would have any input, [he] was speaking as a concerned citizen." (*Id.*) With respect to the comments Plaintiff made on his opinions for how the money should be spent, Plaintiff

compares his situation to that in *Pickering* where "[t]eachers . . . as a class, [were] the members of a community most likely to have informed and definite opinions as to how funds allotted to the operation of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal." (*Id.* (quoting *Pickering*, 391 U.S. 563, 572 (1968)).

Although the distinction between speaking as a citizen and speaking as an employee on matters of personal interest has been recognized,[2] these roles are not mutually exclusive. The United States Supreme Court has recently emphasized that "our precedents dating back to *Pickering* have recognized that speech by public employees on subject matter related to their employment holds special value precisely because those employees gain knowledge of matters of public concern through their employment." *Lane v. Franks*, ___ U.S. ___, 134 S. Ct. 2369, 2379 (2014). Therefore, "it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal." *Id*.

Since Plaintiff's comments regarded the sustainability of the take-home computer program and the methods used to determine how to spend money pursuant to that program, I suggest that there is at least an issue as to whether Plaintiff's comments are akin to those made in *Pickering* regarding the school board's decisions to spend too much money on athletics.

However, I suggest that the second prong of the *Pickering* framework weighs against the likelihood of his success. When undertaking the *Pickering* balancing test, an

---

[2] *E.g., Scarborough v. Morgan Co. Bd. Of Educ.*, 470 F.3d 250, 256 (6th Cir. 2006).

important consideration is "'whether an employee's comments meaningfully interfere with the performance of [his or] her duties, undermine a legitimate goal or mission of the employer, create disharmony among co-workers, impair discipline by superiors, or destroy the relationship of loyalty and trust required of confidential employees.'" *Leary*, 228 F.2d at 739 (quoting *Pickering*, 391 U.S. at 570)). Defendant asserts that "Mr. Hutchison expected Plaintiff to support [the decision to allow students to take computers home] and begin working for its success. Instead, his actions undermined the District's efforts. This was a serious concern, because the District would have to rely on Plaintiff to implement the infrastructure component of the program." (Doc. 15 at ID 187). Defendants state that Plaintiff made his "highly skeptical" viewpoint "exceedingly clear to the Board's Technology Committee," by "openly disagreeing with the Board President about whether and how such a plan should be implemented." (Doc. 15 at ID 180.) Defendants also point to the email and attached letter that Plaintiff wrote to Defendant Hutchison on December 8, 2014, and characterize it as a threat to not "sign a new contract unless his position was changed to that of an administrator . . . his salary was increased, he was given merit pay, his hours were limited and he was allowed to decide how the one-to-one program was to be implemented." (*Id.*)

In his Reply brief, Plaintiff first argues that his statements made at the Technology Committee meetings should not be admissible under Federal Rules of Evidence 403 because they would be unfairly prejudicial: He asserts that Defendants failed in their duty to keep minutes at these meetings and therefore they should not be allowed to introduce statements Plaintiff allegedly made at these meetings against him. (Doc. 18 at ID 289-

90.) Plaintiff does not show unfair prejudice at all here, let alone unfair prejudice substantially outweighing the probative value of his statements, as required by Federal Rules of Evidence 403, because Plaintiff is responsible for and has control over statements that he makes regardless of Defendants' alleged failure to keep minutes. *See also* Fed. R. Evid. 801(d)(2) (making these statements admissible under the statements-against-an-opposing-party exclusion to hearsay).

With respect to the email and attachment sent to Defendant Hutchison on Dec. 8, 2013, Plaintiff asserts in his Reply brief that Defendants mischaracterizes his statements. (Doc. 18 at ID 291-92.) There is no need to determine whether Defendants mischaracterize the email and attached letter, as it can speak for itself. Plaintiff stated in his letter, "Just between you and me, you know that if I walk away from here January 1st, there is no way the program will get off the ground this coming year." (Doc. 15-3 at ID 225.) He asked for a number of changes in his employment contract for the next year as well as some concessions regarding the one-to-one program. (*Id.*)

> I'm sure it['] s no secret that I'm somewhere between being highly skeptical and outright against [certain aspects of the one-to-one program]. Part of the reason I'm in this camp is because I fear that the technology committee is on a power binge and that Anne Freel has all but taken over the administrative role of technology director—again, just between you and me, but that committee has completely rubbed me the wrong way and a lot of unnecessary friction has developed between me and its members. I simply cannot work under that set of circumstances, and while I respect the technology committee's right to operate and propose recommendations to the board, I don't feel that it is making a reasonable effort to work with me and be cordial with me personally. I feel like ever since Anne Freel took over and created this new committee, it has been ruling largely in secret, and with an iron fist.

> Bottom line is this—if the district wants a successful one-to-one program, I'm willing to drop my objections to the take-home laptops and re-adjust my attitude to a more positive one, but the board must be willing to compromise with me, because I feel that I'm conceding a LOT here by accepting the responsibility of trying to manage such a program.

(*Id.* at ID 226-27.)

I suggest that the *Pickering* balancing test is not likely to weigh in Plaintiff's favor here because his comments could "meaningfully interfere with the performance" of his duties, "undermine a legitimate goal or mission" of his employers, "create disharmony among co-workers, impair discipline by superiors," and "destroy the relationship of loyalty and trust required of confidential employees." *See Leary*, 228 F.2d at 739. Many of his statements could cause his employers to fear that he would be unable to implement or possibly even would undermine the one-to-one program.

> iii.   *Michigan Whistleblower Protection Act ("WPA") Claim*

Michigan Compiled Laws Section 15.362 provides,

> An employer shall not discharge . . . an employee . . . because the employee reports, or is about to report, verbally or in writing, a violation or suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

Defendants assert, "The clear and unambiguous language of the WPA does not allow for a preliminary injunction ordering reinstatement. Rather, reinstatement may only be considered at the time of judgment. Accordingly, no matter the likelihood of Plaintiff's success on the merits, this Court should deny" Plaintiff's Motion. (Doc. 15 at ID 201.) Michigan Compiled Laws Section 15.364 provides, "A court, in rendering a judgment in

an action brought pursuant to this act, shall order, as the court considers appropriate, reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages, or any combination of these remedies." I suggest that the plain language of the WPA does not allow for reinstatement as a preliminary injunction since it only lays out reinstatement as a remedy available when a court is rendering a judgment.

Further, as Defendants point out, "the non-renewal of a contract is not actionable under the WPA." (Doc. 15 at ID 201.) Defendants direct the Court to *Wurtz v. Beecher Metro District*, 495 Mich. 242, 252-53 (2014), where the Michigan Supreme Court held, "as gleaned from the WPA's express language, the statute only applies to individuals who currently have the status of an 'employee'. . . Noticeably absent …is any reference to prospective employees or job applicants" in direct and "stark contrast to Michigan's Civil Rights Act (CRA)." Accordingly, the Michigan Court held that "the WPA does not apply to decisions regarding contract renewal" but would "protect employees working under fixed-term contracts from prohibited employer actions taken with respect to an employee's service under such a contract." *Id*. at 256. Since Plaintiff's claim focuses on Defendant's decision not to renew his contract, he is unlikely to prevail on his WPA claim either.

### c. *Irreparable Injury, Substantial Harm to Others, and Public Interest Factors*

"A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Certified Restoration*, 511 F.3d. at 550.

An injury "is not fully compensable by money damages if the nature of the plaintiff's loss would make the damages difficult to calculate." *Id.* The "loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "[T]he harm alleged must be both certain and immediate, rather than speculative or theoretical." *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)

Plaintiff does not argue that his damages are not fully compensable by monetary relief, rather he argues that his "First Amendment right to free speech will continue to be violated for as long as he is chilled from continuing to engage in his First Amendment Right to free speech." (Doc. 8 at ID 96.) He states that "since his termination, he has not spoken at any future public meetings held by the District because of fear of future retaliation" and that "[t]he only remedy which can remove the chilling effect of the Defendant's actions, and thus restore Wolgast's First Amendment right to free speech, is to reverse the action which caused the chilling effect—namely, termination. This can only be accomplished by immediately reinstating Wolgast." (*Id.* at ID 96-97.)

As Defendants point out, Plaintiff's claimed injury has already occurred and any future injury is merely speculative. There is no apparent potential for a continuing violation here since the alleged damage has already been done. It is difficult to see how Plaintiff could fear retaliation for speaking at Technology Committee meetings now that Defendants have no means of retaliating against him—they cannot terminate him from a job he no longer has. Therefore, I suggest that the irreparable harm factor also weighs against Plaintiff.

The third factor requires determining the probability that granting the preliminary injunction would result in substantial harm to others. Defendants would likely argue that they would be irreparably harmed by being compelled to renew Plaintiff's contract, but there are no "others" that would suffer harm either by granting or denying the injunction.

Moreover, I suggest that the balance of harms test weighs against Plaintiff. Here, the harm of not reinstating Plaintiff is to be balanced against the harm of reinstating him. *See id.* Plaintiff asserts that an injunction is not likely to cause harm to others, and in fact will benefit them because "[t]he district would benefit from receiving his services" considering his qualifications and four years of experience working for the District. (Doc. 8 at ID 98.) Defendants contend that reinstating Plaintiff would be a danger to the "District, its students and the public." (Doc. 15 at ID 205-06.) According to Defendant, the District has determined that it was in the best interests of the students and the teachers to implement the one-to-one program beginning in fall 2015 and, if reinstated, Plaintiff's open opposition to the program would not be compatible with his role of implementing the program: "If this Court were to grant Plaintiff's request for reinstatement, it would disrupt the effective functioning of the School District, by forcing the administration to work with an employee who they believe is not trustworthy." (*Id.*) Defendants also express security concerns with respect to Plaintiff's ability to access computer systems upon reinstatement. (*Id.*)

Plaintiff counters in his Reply brief that the statements Defendants are relying on to conclude that Plaintiff  opposed the one-to-one program are either inadmissible against him because Defendants had a duty to keep minutes at the meetings or mischaracterize

the email and attachment he sent on December 8, 2014. (Doc. 18 at ID 289-92.) As discussed above, these arguments are not persuasive. *See* Discussion *supra* Part II.B.2.a.ii. Plaintiff also replied that he had not commented negatively to the group on December 8, 2014, he was not reluctant to work with the administrators, he had taken no actions to undermine the District's efforts, and he did everything that was required of him to move forward with the one-to-one program. (Doc. 18 at ID 292-95.) I suggest, however, that the email and attachment sent to Defendants on December 8, 2014, are enough to justify Defendants' sense of mistrust and could result in substantial harm to Defendants, students, teachers, and the community if Plaintiff is reinstated. Clearly the District has set a deadline that will be challenging to meet in any circumstances and therefore it will be relying heavily on Mr. Kendra and whomever it chooses to replace Plaintiff. Despite the fact that Plaintiff is qualified and experienced in his role, a lack of trust and evidence that he does not share in the goals of the District could create a tangible roadblock to meeting the District's one-to-one program goals.

For the same reasons, I suggest that the public interest factor also weighs against Plaintiff.

### 3.    Conclusion

Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Preliminary Injunction be **DENIED**.

## III.   <u>REVIEW</u>

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and

file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 13, 2015                          S/ PATRICIA T. MORRIS
                                              Patricia T. Morris
                                              United States Magistrate Judge

## <u>CERTIFICATION</u>

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record and plaintiff, Brandon M. Wolgast, who is an e-filer.

Date: April 13, 2015                          By <u>s/Kristen Krawczyk</u>
                                                    Case Manager to Magistrate Judge Morris