UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRANDON WOLGAST,

        Plaintiff,                            Case No. 15-cv-10495

v.                                        Honorable Thomas L. Ludington

TAWAS AREA SCHOOL DISTRICT
BOARD OF EDUCATION, et al.,

        Defendants.

_____/

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION, OVERRULING OBJECTIONS, GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING MOTION FOR LEAVE TO FILE, DISMISSING COUNTS I & II OF COMPLAINT WITH PREJUDICE, AND DISMISSING COUNTS III–VIII OF COMPLAINT WITHOUT PREJUDICE**

Plaintiff Brandon Wolgast initiated this case against Defendants Tawas Area School District Board of Education, Jeffrey Hutchison, Anne Freel, and Connie O'Connor on February 6, 2015. See Pl.'s Compl., ECF No. 1. Seventeen days later, Wolgast amended his complaint and filed a motion for preliminary injunctive relief. *See* Pl.'s Am. Compl., ECF No. 7; Pl.'s Mot. Prelim. Inj., ECF No. 8. Wolgast's Amended Complaint alleges eight grounds for relief, including: (1) violation of Due Process; (2) unlawful retaliation under the First Amendment; (3) unlawful retaliation under the Michigan Whistleblower Protection Act; (4) improper nonrenewal of his contract in violation of Michigan law; (5) improper termination without a school board vote in violation of Michigan law; (6) violation of the Michigan Open Meetings Act; (7) unlawful creation of public policy without the vote of a school board; and (8) violation of the Michigan Open Meetings Act by failing to keep proper meeting minutes.

In conjunction with his Amended Complaint, Wolgast filed a motion for preliminary injunctive relief based on the first three counts of his complaint. *See* Pl.'s Mot. Prelim. Inj., ECF No. 8. All pretrial matters in this case were referred to Magistrate Judge Patricia T. Morris. *See* ECF No. 3. Judge Morris issued a Report & Recommendation on Wolgast's motion for a preliminary injunction on April 13, 2015. *See* Rep. & Rec., ECF No. 20. That Report was adopted on September 22, 2015 and Wolgast's motion for a preliminary injunction was denied.

Both parties have filed motions for summary judgment. On December 23, 2015, Judge Morris issued a Report recommending that Defendants' motion for summary judgment be granted in part and that Wolgast's motion for partial summary judgment be denied. She further recommended dismissing Wolgast's federal claims with prejudice and dismissing his state law claims without prejudice. Both parties have timely filed objections to the Report. None of the parties' objections have merit, those objections will be overruled and Wolgast's case will be dismissed.

**I.**

The parties do not object to the Report's recitation of the facts of this case. Those facts will be adopted as though fully restated herein.

**II.**

**A.**

Pursuant to Federal Rule of Civil Procedure 72, a party may object to and seek review of a Magistrate Judge's report and recommendation. *See* FED. R. CIV. P. 72(b)(2). If objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). Objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted).

De novo review requires at least a review of the evidence before the Magistrate Judge; the Court may not act solely on the basis of a Magistrate Judge's report and recommendation. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the Court is free to accept, reject, or modify the findings or recommendations of the Magistrate Judge. *See Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002). If the Court accepts a report and recommendation, the Court is not required to state with specificity what it reviewed; it is sufficient for the Court to state that it engaged in a de novo review of the record.

**B.**

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The focus must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted).

The Court must draw all reasonable inferences in favor of the non-movant when reviewing the evidence and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Entry of summary judgment is appropriate 'against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### III.

Wolgast makes fifteen objections to Judge Morris's Report. Wolgast takes issue with nearly every portion of the Report. Rather than address each of Wolgast's claims serially, his objections will be grouped and addressed by topic. Wolgast's first six objections contend that the Report improperly performed the *Pickering* balancing test in analyzing his First Amendment retaliation claim. Wolgast's next four objections take issue with the Report's conclusion that he is not an administrator.[1] Third, Wolgast contends that the Report erred in analyzing his claim of *Monell* liability. Finally, Wolgast objects to the Report's conclusion that the Personnel Committee was not required to take meeting minutes.

### A.

Wolgast's first group of objections concerns the Report's application of the *Pickering* balancing test to Wolgast's First Amendment claim. Although Wolgast makes six different objections, his First Amendment claim will be analyzed de novo in its entirety.

To establish a claim under § 1983 a "plaintiff must establish both that 1) []he was deprived of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Redding v. St. Eward*,

---

[1] In the midst of these four objections Wolgast makes a procedural objection wherein he claims that the Report improperly relied upon this Court's prior order on his motion for a preliminary injunction. This objection does not seek specific de novo review of a particular portion of the Report. Even if it did, it would not be meritorious. The Report relied on the legal conclusions of the Court's September 22, 2015 Order on Wolgast's motion for a preliminary injunction. Those conclusions are not affected by the fact that Wolgast's claims are now being reviewed at the summary judgment stage. The objection is overruled.

241 F.3d 530, 532 (6th Cir. 2001). A public employee bringing a First Amendment retaliation claim under § 1983, such as Wolgast, must make the following prima facie case of retaliation:

> (1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct.

*Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012) (quoting *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006)). "If the plaintiff makes this showing, the burden then shifts to the defendant to show by a preponderance of the evidence that it would have taken the same action even in the absence of the protected conduct." *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000) (internal quotation marks omitted).

Public employees must make a heightened showing when demonstrating that their speech was "constitutionally protected." *See id*. This showing requires a two-step inquiry. First, the employee must establish that the speech in question "touched on matters of public concern." *Id*. (citing *Connick v. Myers*, 461 U.S. 138, 146 (1983)). Speech that touches on matters of public concern has been defined by the Supreme Court as "speech relating to any matter of political, social, or other concern to the community." *Dye*, 702 F.3d at 295 (quoting *Connick*, 461 U.S. at 146).

If the plaintiff can show that his speech touched on a matter of public concern, his speech is then subjected to the *Pickering* balancing test. *See Pickering v. Board of Educ.*, 391 U.S. 563 (1968). Under *Pickering*, a court must weigh "the employee's interest 'in commenting upon matters of public concern' against 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Leary*, 228 F.3d at 737 (quoting *Pickering*, 391 U.S. at 568). The Supreme Court has articulated the following considerations that courts must take into account when applying the *Pickering* balancing test:

"whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Dye*, 702 F.3d at 295 (quoting *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)). Determining whether a public employee's speech is protected is a question of law. *Id*.

**1.**

The parties do not dispute that Wolgast spoke on at least some matters of public concern in the lead up to the decision that his contract not be renewed.[2] Wolgast contends that the Report erred by not assigning a higher burden of proof to Defendants. He argues that where speech is on matters of substantial public concern, Defendants must meet a higher burden in demonstrating that the speech was disruptive.

Wolgast claims that the Report did not properly weigh his speech and as a result did not recognize it as having been on matters of substantial public concern. Wolgast is correct. The Report did not address this argument for a heightened burden, but for good reason. Wolgast did not make this argument in his briefing on Defendants' motion for summary judgment. Pro se or not, he cannot raise the issue now.

**2.**

The primary dispute between the parties focuses on the proper balancing of Wolgast's interest in speaking about the one-to-one take-home device program and Defendants' interest in

---

[2] In a footnote to their response to Wolgast's objections, Defendants note that they "most assuredly dispute the legal conclusion that Plaintiff's alleged speech was protected." Defs.' Resp. to Objs. 11, ECF No. 82. Defendants then go on to state their position that Wolgast was speaking as an employee and not a citizen, during each incident in question. Judge Morris concluded that there is at least a debatable issue of material fact as to whether Wolgast was speaking on matters of public concern and could thus meet the first Pickering prong. Defendants' suggestion in a footnote that the Report errs in reaching this conclusion is not a proper objection and will not be entertained.

maintaining efficient operation of the workplace. *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Illinois*, 391 U.S. 563, 568 (1968). Under *Pickering*, a court must weigh "the employee's interest "in commenting upon matters of public concern" against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Leary*, 228 F.3d at 737 (quoting *Pickering*, 391 U.S. at 568). The Supreme Court has articulated the following considerations that courts must take into account when applying the *Pickering* balancing test: "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Dye*, 702 F.3d at 295 (quoting *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)). Determining whether a public employee's speech is protected is a question of law. *Id*.

The weight of evidence in Wolgast's case supports the determination that the interests of the School Board outweighed Wolgast's interests in commenting on matters of public concern. Wolgast appeared at three different board meetings and expressed varying levels of skepticism to the program that the Board was entrusting him as an employee (in part) to implement. Multiple individuals present at these meetings noted Wolgast's negative tone or "disrespect." Perhaps most importantly, Wolgast sent a letter to Superintendent Hutchison (who was present at each board meeting where Wolgast commented) outlining a list of demands for continued employment. The letter to Mr. Hutchison sought to leverage Wolgast's ability to assist with deploying the District's new laptop program in order to obtain more favorable employment conditions.

Wolgast argues that the December 8 letter he sent to Mr. Hutchison should not be considered because Mr. Hutchison had already finalized the decision not to renew Wolgast before he read the letter. But the evidence does not support this conclusion. Mr. Hutchison testified that he had reviewed the email prior to formally recommending non-renewal to the board and that he presented the email to the board at that time. Thus, the email may be appropriately considered in the *Pickering* balancing test.

The email itself demonstrates that Wolgast was intent on using his role in the new technology program as a bargaining chip to secure different employment conditions. This Court's prior interpretation of Wolgast's letter remains relevant, even at the summary judgment stage: "The email Wolgast sent to Superintendent Hutchison cannot reasonably be read as attempting to accomplish anything other than more favorable employment conditions in exchange for his cooperation." Sept. 22, 2015 Order 17, ECF No. 61. When Wolgast's comments at the three board meetings are viewed in light of his email to Superintendent Hutchison, the *Pickering* balancing test weighs heavily in favor of Defendants.

Wolgast also attempts to further his argument that Superintendent Hutchison is not actually his supervisor. He claims that Tawas High School Principal Eric Diroff is his supervisor and Mr. Diroff reports to Superintendent Hutchison. But no reasonable jury would conclude that Superintendent Hutchison is not directly or indirectly Wolgast's supervisor. This is especially so in light of the fact that when Wolgast issued his demand letter, he directed it to Superintendent Hutchison.

**B.**

Wolgast's next set of objections concern Judge Morris's analysis of Wolgast's claim of *Monell* liability against the Board. Because there is no cognizable underlying violation, Wolgast's *Monell* claim will be dismissed and his objections need not be addressed.

## C.

The third set of objections made by Wolgast concern the Report's conclusion that he was not an administrator and that, accordingly, his due process rights were not violated. He claims that a district policy and Michigan state law vest him with administrator status, which means he cannot be terminated without a showing of cause or constitutional due process protections.

The Due Process clause "requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 569–570 (1972)). The Constitution does not protect all employees from termination but only those with "a property right in continued employment." *Id*. at 538. Property interests, such as that in continued employment, "are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law[.]" *Roth*, 408 U.S. at 577. In *Loudermill*, the Supreme Court concluded "that a state statute providing that civil service employees could be dismissed only for 'misfeasance, malfeasance, or nonfeasance in office' created a property interest in continued employment[.]" *Rodgers v. 36th Dist. Court*, 529 F. App'x 642, 648 (6th Cir. 2013) (quoting *Loudermill*, 470 U.S. at 538–39). In contrast to a statute requiring some showing of cause before an employee may be terminated, "[n]o constitutional entitlement to procedural due process can logically arise when the decision-maker's power is wholly discretionary." *McClain v. NorthWest Cmty. Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 330 (6th Cir. 2006)

Wolgast makes both legal and factual claims on this point. He argues that the interplay of the Michigan statutes concerning school administrators should be read to count him as an administrator. He then argues that district policy provisions and internal documents classify him as an administrator.

Wolgast's legal claim has not significantly changed since it was addressed by this Court in its September 22, 2015 Order, where Wolgast's request for a preliminary injunction was denied. Wolgast makes a legal argument about the interplay of Michigan statutes that prescribe when a school district employee is classified as an administrator. The analysis of those statutes has not changed. The only substantial difference in Wolgast's argument is his additional reliance on another provision of Michigan state law that uses the language "other administrators." Mich. Comp. Laws § 380.471a. But this additional section is almost materially identical to the prior provision relied upon by Wolgast: Mich. Comp. Laws § 380.1229. Wolgast thinks the similarity between the two provisions means Mich. Comp. Laws § 380.1536 cannot be relied upon to define other administrators in § 380.1229. But that argument is incorrect. Section 380.471a, although not referenced in this Court's September 22 Order, does not alter than analysis. If anything it would be subject to the same analysis that § 380.1229 was subject to. It does nothing to help Wolgast's claim for administrator status.

Next, Wolgast objects to the Report's decision not to address his argument that a district policy also granted him administrator status. He made the following argument: "Alternatively, District Policy 1443 (EX P, p 6), which less restrictively applies to the 'Non-Renewal of Administrative Contracts" and simply to "the contract of an administrator' provides due process protections virtually identical to those in M.C.L. 380.1229, and thus, creates a virtually identical

continued property interest." Pl.'s Mot. Summ. J. 19, ECF No. 63. Wolgast also attached the policy to his motion.

The Report rightly disregarded this argument as underdeveloped. Even though Wolgast is pro se, the liberal construction of his claims does not require the Court to wholly construct arguments for him based on conclusory statements.

Even if this argument was properly presented, it is meritless. The district policy cited by Wolgast addresses the non-renewal of administrative contracts. Wolgast has offered no evidence, as a factual matter, that he had an administrative contract. Once again, the analysis in the Court's September 22 Order still remains relevant, applying the summary judgment standard. That analysis is incorporated here. No reasonable jury would conclude that Wolgast was an administrator or had an administrative contract in light of the fact that he demanded of Superintendent Hutchison that he be made an administrator. That demand amounts to a concession by Wolgast that he was not an administrator. Further, simply possessing a contract which shares some characteristics with an administrative contract (that he must be notified of non-renewal 30 days in advance) does not mean that he has an administrative contract under district policy.

Wolgast's objections to the Report's conclusion that he is not an administrator will be overruled.

**D.**

Finally, the Report recommended dismissing Wolgast's state law claims without prejudice. Both parties objected to this conclusion. Those objections will be overruled. This Court may decline to exercise supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of State law,

> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). When a plaintiff's federal claims have been dismissed on the merits, the question of whether to retain jurisdiction over the state law claims rests within the Court's discretion. *Blakely v. United States*, 276 F.3d 853, 860 (6th Cir. 2002). However, the dismissal of the claim over which the federal court had original jurisdiction creates a presumption in favor of dismissing without prejudice any state-law claims that accompanied it to federal court. *Id*. at 863. In addition, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

The policy considerations favoring the dismissal of supplementary state law claims are compelling here. Wolgast's supplementary state law claims will be dismissed without prejudice.

## IV.

Accordingly, it is **ORDERED** that the Report, ECF No. 76, is **ADOPTED**.

It is further **ORDERED** that Plaintiff Brandon Wolgast's Objections, ECF No. 80, are **OVERRULED**.

It is further **ORDERED** that Defendants' Objections, ECF No. 79, are **OVERRULED**.

It is further **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 56, is **GRANTED in part**.

It is further Ordered that Plaintiff's **MOTION** for Partial Summary Judgment, ECF Nos. 57 & 63, is **DENIED**.

It is further **ORDERED** that Plaintiff's motion to file newly discovered evidence, ECF No. 73, is **DENIED**.

It is further **ORDERED** that Counts I & II of Plaintiff's Amended Complaint, ECF No. 7, are **DISMISSED with prejudice**.

It is further **ORDERED** that Counts III–VIII of Plaintiff's Amended Complaint, ECF No. 7, are **DISMISSED without prejudice**.

Dated: August 5, 2016                       s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 5, 2016.

                                    s/Michael A. Sian
                                    MICHAEL A. SIAN, Case Manager

---